**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Stuart Moffett,<br>Plaintiff,<br>v.<br>Ally Financial,<br>Defendant. | No. CV-25-04074-PHX-SHD<br>**ORDER** |

Pending are four motions filed by Plaintiff Stuart Moffett which include his Motion to Strike Defendant's Answer (Doc. 18), Motion for Sanctions (Doc. 25), Motion for Judicial Notice (Doc. 19), and a Motion to Compel Supplemental Discovery (Doc. 50). Also pending is Ally Capital Corp. d/b/a Ally Bank's ("Ally Bank") Motion for Judgment on the Pleadings.[1] The motions are fully briefed. (Docs. 22, 24, 26, 34, 35, 42.) For the reasons stated below, Moffett's motion to strike, motion for sanctions, and motion for judicial notice will be **denied**. His motion to compel supplemental discovery will be **denied as moot**. Ally's motion for judgment on the pleadings will be **granted**.[2]

---

[1] Although Ally Financial is named as defendant, Ally Bank appeared and asserts that it is the proper party to this action. (*See* Doc. 6.) Previously, Moffett indicated he did not agree, (*See* Doc. 18), but he no longer contests that Ally Bank is the proper party and asserts several claims against Ally Bank regarding its alleged failure to disclose its corporate identity. (*See* Doc. 26 at 3–4.) Accordingly, I will direct the Clerk of Court to update the caption to reflect that Ally Bank is the defendant in this case.

[2] I find these motions suitable for decision without oral argument. *See* LRCiv 7.2(f).

## I. BACKGROUND

On May 26, 2025, Moffett purchased a used 2019 Hyundai Kona from Arizona Car Sales. (Doc. 14-1 at 2–7.)[3] Moffett did not pay for the car outright; rather, he made a $2,000 downpayment and entered into a financing agreement ("Financing Agreement") with Arizona Car Sales to cover the remainder of the price. (*Id.* at 2.) The Financing Agreement provides several pertinent details: first, the amount financed was $20,567.25;[4] second, Moffett was to make 72 monthly payments of $418.88, beginning July 10, 2025, to pay off the loan; third, Moffett "agree[d] to pay the Seller – Creditor . . . in U.S. funds according to the payment schedule"; and fourth, Arizona Car Sales assigned its interests in the contract to Ally Financial. (*Id.* at 2, 7.) Ally Financial then assigned its rights to Ally Bank, its wholly owned subsidiary. (Doc. 14 at ¶ 4; Doc. 23 at 5.)

Moffett alleges that, "on July 7, 2025" he "tendered a valid Promissory Note as full and final payment for the alleged debt under [Uniform Commercial Code ("UCC")] 3-104 and UCC 3-603 and mailed it to Defendant via Certified Mail." (Doc. 1-1 at 9.)[5] Ally Financial did not process Moffett's Promissory Note and "instead continued collection activities." (*Id.*) On August 11, 2025, Moffett "requested a written justification for the rejection of the payment" through a "Notice of Dishonor" which he asserts he sent pursuant to UCC 3-505. (*Id.*) Nonetheless, Ally Financial "continued to attempt collections, damaging [Moffett's] credit and financial standing." (*Id.*) Moffett alleges that Ally Financial "failed to validate the debt" and did not provide "the original wet-ink promissory

---

[3] Ally Bank attached the Financing Agreement and several other documents to its Answer. As discussed below, I will consider these documents under the incorporation by reference doctrine.

[4] The total expected payment, accounting for a yearly interest rate of 13.340% and assuming timely payments, was $30,159.36. (*Id.*)

[5] Generally, an amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). But because Moffett proceeds pro se and clearly intended to incorporate the facts alleged in his prior complaint into his Second Amended Complaint, (*see* Doc. 12 at 4), I consider both complaints in my analysis.

note, chain of custody, or a full accounting ledger of the alleged loan transaction." (*Id.*)

Moffett's "Promissory Note" is a billing statement from Ally Bank to which Moffett added several handwritten notations and his signature. (Doc. 14-4 at 2.) Moffett's handwritten notations include phrases like "offer accepted for value received $20,567.25," "accord and satisfaction of the obligation," "pay to the order of: Ally Financial Twenty Thousand Five Hundred Sixty-Seven 25/100," and "without recourse to dishonor return within (20) days." (*Id.*) Moffett asserts that his Promissory Note satisfied his obligations under the Financing Agreement, and that any subsequent attempts by Ally Bank to collect the debt were unlawful.

Moffett filed suit in the Superior Court of Maricopa County on September 2, 2025, (Doc. 1 at ¶ 1), alleging violation of the UCC, the Fair Debt Collection Practices Act ("FDCPA"), the Truth in Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), as well as "fraudulent debt collection and misrepresentation," (Doc. 1-1 at 9–10). He sought statutory and compensatory damages, "discharge of the alleged debt," "deletion of any negative credit reporting related to the disputed debt," and court costs. (*Id.* at 10.)

Ally Bank removed the case to federal court on October 29, 2025. (Doc. 1.) It asserts that it is the proper party because Ally Financial assigned its rights under the Financing Agreement to Ally Bank. (*Id.* at 1 n.1.) After removal, Moffett filed a Second Amended Complaint ("SAC"),[6] (Doc. 12), which incorporates the factual allegations and claims asserted in his prior complaint, and brings additional claims under the Arizona Consumer Fraud Act ("ACFA"), the Arizona Commercial Code ("ACC"), and argues that any assignment of rights by Ally Financial to Ally Bank was improper because he did not consent to it. (Doc. 12 at 4.)

On November 24, 2025, Ally Bank answered the SAC. (Doc. 14.) Its Answer included several exhibits, including Moffett's "Promissory Note," which it asserts are properly before me because they form the basis of Moffett's claims. (Doc. 23 at 2 n.1.)

---

[6] This pleading is docketed as "Amended Complaint." (Doc. 12.) However, because Moffett filed an original and amended complaint in state court, it is his Second Amended Complaint ("SAC") and I will refer to it as such. (*See* Doc. 23 at 2.)

Moffett then filed a Reply to Ally Bank's Answer, (Doc. 17), and a motion to strike the Answer, (Doc. 18). On December 30, 2025, Ally Bank filed its motion for judgment on the pleadings. (Doc. 23.) One week later, Moffett filed a motion seeking sanctions against Ally Bank for its use of the term "sovereign citizen" to characterize Moffett's claims. (Doc. 25.) Over the next several weeks, the parties briefed the pending motions, all of which are now ripe for review. (*See* Docs. 22, 24, 26, 34, 35, 42.)

Meanwhile, I issued a Case Management Order on January 12, 2026, (Doc. 27), and the parties began engaging in discovery, (*see, e.g.*, Docs. 28, 29). After the parties raised several discovery disputes, including Moffett's motion to compel, (Doc. 50), I stayed all discovery deadlines until resolution of the pending motions. (Doc. 53.)

## II. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) motions "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *XY Skin Care & Cosms., LLC v. Hugo Boss USA, Inc.*, 2009 WL 2382998, at *1 (D. Ariz. Aug. 4, 2009) (quotation marks omitted). "Accordingly, a Rule 12(f) movant not only must demonstrate the allegedly offending material is redundant, immaterial, impertinent, or scandalous, or constitutes an insufficient defense, but must also show how such material will cause prejudice." *Id.*

Moffett moves to strike Ally Bank's Answer because he disagrees with Ally Bank's version of the facts and objects to the form of its affirmative defenses. (*See generally* Doc. 18.) He fails, however, to show that the paragraphs he seeks to strike are "redundant, immaterial, impertinent, or scandalous, or constitutes an insufficient defense" or that he will suffer any prejudice from their retention. *See XY Skin Care & Cosms.*, 2009 WL 2382998, at *1. His motion to strike will therefore be denied.

## III. MOTION FOR SANCTIONS

I will also deny Moffett's request for sanctions. Moffett requests sanctions for Ally

Bank's use of the term "sovereign citizen" in its motion for judgment on the pleadings because it is "a stigmatizing ideological label."[7] (Doc. 25 at 1.) Sovereign citizen claims are often dismissed as frivolous and lacking a basis in law. *Wright v. Arrendale*, 2025 WL 3041897, at *1 (D. Ariz. Oct. 31, 2025) ("Sovereign-citizen arguments and claims have been consistently and thoroughly rejected by every branch of the government for decades" (quotation marks omitted)). And although Moffett may not agree with, or appreciate, Ally Bank's comparison of his claims to those brought by sovereign citizens, the comparison is not unwarranted. Moffett's claims bear several hallmarks of the sovereign citizen ideology. *See Gerken v. Cap. One Fin. Corp.*, 2024 WL 5378958, at *3 (N.D.N.Y. Nov. 27, 2024), *report and recommendation adopted*, 2025 WL 47962 (N.D.N.Y. Jan. 8, 2025) (identifying a claim that the defendant was "compelled to discharge [the plaintiff's] outstanding debt based on the 'negotiable instrument' submitted by him" as a claim "other sovereign citizens have raised" and collecting similar cases). Ally Bank's use of the term "sovereign citizen" is therefore legitimate legal argument, and does not warrant sanctions under Rule 11 or 28 U.S.C. § 1927. Moffett's motion for sanctions will therefore be denied.[8]

---

[7] On January 21, 2026, Moffett filed a separate case against Ally Bank's counsel, Ms. Keys, based on this same conduct. *See Moffett v. Keys*, Case No. 2:26-cv-00364-DWL, (D. Ariz. 2026).

[8] Several of the cases cited by Moffett in his motion for sanctions do not exist or are cited for a proposition they do not represent. (*See, e.g.*, Doc. 25 at 2 (citing *Griffin v. U.S. Bank, N.A.*, No. 5:15-cv-00112, 2015 WL 1470126, at *4 (N.D. Cal. Mar. 31, 2015), which does not exist); *see also* Doc. 34 at 2–5 (summarizing errors).) Moffett is reminded of his obligations under Rule 11, which provides that when litigants—including unrepresented parties—submit papers to the court, they certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(2). Non-existent cases are not "existing law" and use of such cases in court filings is sanctionable conduct. *See Dodge v. FirstService Residential Arizona LLC*, 2025 WL 3653164, at *3 (D. Ariz. Dec. 17, 2025).

## IV. JUDGMENT ON THE PLEADINGS

### A. Legal Standard

Rule 12(c) provides that a party may move for judgment on the pleadings after the close of pleadings "but early enough not to delay trial." Fed. R. Civ. P. 12(c). A judgment on the pleadings is appropriate when, taking all the factual allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). A court's analysis "under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation marks omitted).

Accordingly, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, I do not accept legal conclusions as true, nor do I consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)). For the purposes of ruling on a Rule 12(c) motion, I must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### B. Judicial Notice and Incorporation by Reference

Ordinarily, courts may not consider evidence outside the pleadings on a Rule 12(c) motion. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Xcentric Ventures, L.L.C. v. Borodkin*, 934 F. Supp. 2d 1125, 1134, 1134 n.4 (D. Ariz. 2013), *aff'd*, 798 F.3d

1201 (9th Cir. 2015) (noting that the standard is the same for motions under Rule 12(b)(6) and 12(c)). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908.

Under Federal Rule of Evidence 201(b), courts "may only take judicial notice of adjudicative facts that are 'not subject to reasonable dispute.'" *Id.* (quoting Fed. R. Evid. 201(b)). Facts are properly subject to judicial notice only if they are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(1)–(2). For example, public records, including the "records and reports of administrative bodies" are properly subject to judicial notice, but "handwriting on an envelope mailed to an [agency]" is not. *Ritchie*, 342 F.3d at 909.

In addition to judicial notice, "[c]ertain written instruments attached to pleadings may be considered part of the pleading" and "[e]ven if a document is not attached to a complaint, it may be incorporated by reference . . . if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 908. In such cases, courts may consider the document and may assume its contents are true. *Id.* "The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan, or when a plaintiff's claim about stock fraud is based on the contents of SEC filings." *Id.* (internal citations omitted).

Ally Bank attached five documents to its Answer that it contends may be properly considered at this stage: (1) the Financing Agreement (Exhibit A), (2) a "confirmation of assignment" recognizing Ally Financial's assignment of its rights to Ally Bank (Exhibit B), (3) a "Limited Power of Attorney" designating Ally Financial as Ally Bank's "attorney-in-fact" for certain purposes including "all retail installment sale contracts" (Exhibit C), (4) Moffett's Promissory Note (Exhibit D), and (5) a July 30, 2025 letter from Ally Bank

to Moffett confirming receipt of his Promissory Note and explaining that it was not legally binding on Ally Bank.

Ally Bank argues that I may consider the documents attached to its Answer under the doctrine of incorporation by reference because (1) Moffett attached at least some of these documents to his original complaint in state court,[9] and (2) his claims necessarily rely upon them. (Doc. 23 at 2 n.1; Doc. 35 at 2–3.) For his part, Moffett makes conflicting arguments about what I may consider at this stage. In his motion for judicial notice, he requests that I take judicial notice of certain portions of all five documents for certain conclusions. (*See, e.g.*, Doc. 19 at 2–3 (requesting judicial notice of the Financing Agreement for the fact that "The Contract [was] assigned to Ally Financial"; the date on the confirmation of assignment; and the Promissory Note as establishing that "Defendant admits receiving Plaintiff's instrument").) But in his Response and Amended Sur-Reply, Moffett argues that I may not consider material outside the pleadings, and that judicial notice may not be used to resolve contested facts—like whether he tendered payment—at this stage. (*See, e.g.*, Doc. 26 at 2; Doc. 42 at 2.)

The documents attached to Ally Bank's Answer are not properly subject to judicial notice as they are not facts "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(1)–(2). Nor does Moffett's motion for judicial notice properly request notice of "adjudicative facts not subject to reasonable dispute." *See Ritchie*, 342 F.3d at 908; Fed. R. Evid. 201(b). Moffett's motion will therefore be denied, and I will decline to consider the documents attached to Ally Bank's Answer by judicial notice.

I may, however, consider some of these documents under the doctrine of incorporation by reference. Moffett's claims arise from two central contentions: (1) that he tendered valid payment to Ally Bank through his Promissory Note, fully discharging all

---

[9] Ally Bank did not specify which documents were attached to Moffett's prior versions of Moffett's complaint, and they were not included as attachments to the complaint contained in their Notice of Removal. (*See* Doc. 1.) I therefore do not consider this assertion in my analysis.

his obligations under the Financing Agreement, and (2) that the assignment of Ally Financial's interests under the Financing Agreement to Ally Bank was unlawful. The Financing Agreement is central to these claims, as it creates the obligations at issue, and Moffett agrees that it is accurate. (*See* Doc. 19 at 2 (requesting judicial notice of the Financing Agreement).) The Financing Agreement may therefore be considered under the doctrine of incorporation by reference.

Similarly, Moffett's SAC incorporates by reference the Promissory Note, which he references extensively, contends fully satisfied his obligations under the Financing Agreement, and on which his claims turn. (*See* Doc. 12 at 4; Doc. 1-1 at 9.) Again, Moffett does not contest the authenticity of the Promissory Note. Indeed, in his motion for judicial notice, he urges me to consider it. (Doc. 19 at 2.)

I will also consider the confirmation of assignment and limited power of attorney designation as incorporated by reference because Moffett references these documents in his SAC and alleges that the assignment was unlawful. (Doc. 12 at 4.)

I decline to consider Ally Bank's July 30, 2025 letter to Moffett at this stage. Although neither party contests the authenticity of the letter, Moffett's complaints do not reference the letter, none of his claims arise out of the letter, and it cannot be said to form the basis of his complaint. *See Ritchie*, 342 F.3d at 908. I therefore will not consider the July 30, 2025 letter (Exhibit E) in disposing of the present motion for judgment on the pleadings.

In sum, Moffett's motion for judicial notice (Doc. 19) will be denied, but I will consider Exhibits A–D of Ally Bank's Answer to resolve the motion for judgment on the pleadings.

### C. Discussion

#### 1. Claims Premised on the Promissory Note

Most of Moffett's claims are premised on his allegation that Ally Bank did not accept his Promissory Note as valid payment for, and complete satisfaction of, his

obligations under the Financing Agreement.[10] These include his claims under UCC 3-603, as well as his claims under the FDCPA, FCRA, and TILA, which challenge, in various forms, Ally Bank's continued efforts to collect payments from Moffett, despite his contention that the Promissory Note discharged his debts. (Doc. 1-1 at 9–10.) For example, Moffett challenges Ally Bank's refusal to accept the Promissory Note as a "properly tendered" and "valid negotiable instrument" in Count 1. (*Id.* at 9.) In Count 2 he asserts that Ally Bank "continued collection activities" in violation of the FDCPA. (*Id.*) Count 3 challenges Ally Bank's failure to disclose "whether the promissory note was used to create credit" under the TILA. (*Id.*) Count 4 challenges Ally Bank's alleged "misrepresenta[tion] of the debt by failing to acknowledge that Plaintiff's original promissory note created the credit for the loan." (*Id.* at 10.) And Count 5 challenges Ally Bank's report of his "disputed and potentially invalid debt" to credit bureaus. (*Id.*)

Each of these claims fails because Moffett's Promissory Note was not valid payment. Courts have routinely rejected the notion that a billing statement bearing the debtor's own handwritten notations and endorsement constitutes lawful payment. *See, e.g.*, *Greene v. Discover Bank*, 2024 WL 85872, at *2 (N.D. Cal. Jan. 8, 2024) ("The agreement requires payment in the form of U.S. dollars; it does not permit payment in the form of an account summary on which Plaintiff wrote that payment should be made on demand."); *Showers v. Spectrum Charter Commc'ns*, 2024 WL 5108157, at *1–2 (S.D. Ind. Dec. 12, 2024) ("[U]nilaterally tendering a 'bill of exchange' . . . by handwriting an assortment of financial terms on . . . [a] billing statement has no legal effect"); *Wills v. Ally Fin. Inc.*, 2024 WL 1380628, at *2 (M.D. Fla. Mar. 13, 2024); *Gerken*, 2025 WL 47962, at *2; *Yenovkian v. Apple Card/Goldman Sachs Bank USA*, 2024 WL 4349286, at *2 (D. Nev. Sept. 29, 2024). The Financing Agreement required Moffett to pay 72 monthly

---

[10] Moffett's SAC lists a series of statutes as at issue in this case. (Doc. 12 at 3.) But he only appears to seek relief under the FDCPA, TILA, FCRA, ACFA, and the UCC/ACC. (*Id.* at 4.) These are also the only claims addressed by the present motion, and Moffett did not object to this characterization of the claims at issue in his Response or Amended Sur-Reply. (*See* Docs. 26, 42.)

installments of $418.88 in U.S. funds. Moffett's Promissory Note does not and cannot constitute payment under the Financing Agreement. As a result, Moffett's claims premised on Ally Bank's refusal to accept the Promissory Note as valid payment have no basis in law and will be dismissed. Stated more plainly, those claims are frivolous.

**2. Claims Challenging Assignment and Disclosure**

The only claims that conceivably do not rely on the Promissory Note are Moffett's assertions in his SAC that (a) Ally Financial's assignment of its rights under the Financing Agreement to Ally Bank was unlawful, and (b) Ally Bank allegedly failed to disclose something to someone. (Doc. 12 at 4; Doc. 26 at 3–4.) Moffett lacks standing to challenge the assignment. *See Skelnik v. Citadel Servicing Corp*., 2025 WL 3619331, at *3 (D. Ariz. Dec. 5, 2025) (holding that "borrowers generally do not have standing [to challenge an assignment] because the validity of the assignment does not affect whether borrowers owe their obligations, but only to whom borrowers are obligated"). Further, any claims arising from Ally Bank's alleged failure to disclose are inadequately pled. Moffett fails to allege any facts regarding what Ally Bank failed to disclose, let alone establish that it had a duty to disclose this unidentified information. In his Response, Moffett asserts that Ally Bank violated the FDCPA because it sought to collect under multiple corporate identities. (Doc. 26 at 3.) As an initial matter, this theory does not appear in his complaints. (*See* Doc. 12.) Regardless, it fails because the FDCPA makes clear that a creditor may designate its affiliates to collect on its behalf without running afoul of the FDCPA's proscriptions. 15 U.S.C. § 1692a(6)(B). Moffett has failed to allege any facts or identify any basis in law to support a claim predicated on either the assignment or Ally Bank's allegedly inadequate disclosures. These claims will also be dismissed.

**D. Leave to Amend**

If a pleading can be cured by the allegation of other facts, a pro se litigant is typically entitled to an opportunity to amend a complaint before dismissal of the action. *Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc). A finding of futility itself may justify not granting leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Courts may also consider "bad faith, undue delay, prejudice to the opposing party . . . and whether the party has previously amended his pleadings." *Id.*

I find that any amendment would be futile. This dispute arises entirely out of Moffett's patently frivolous assertion that he can repay Ally Bank by simply endorsing a billing statement with his signature. As explained above, that is not the case. Courts routinely dismiss claims like Moffett's with prejudice because they are frivolous and foreclosed as a matter of law. *See, e.g.*, *Greene*, 2024 WL 85872 at *3; *Showers*, 2024 WL 5108157 at *2. Because any amendment would be futile, I will deny Moffett leave to amend and dismiss his claims with prejudice.

## V. CONCLUSION

In sum, Moffett's claims are frivolous and have no basis in law. I will dismiss this case with prejudice. Moffett's remaining motions—his motions to strike, for sanctions, and for judicial notice—will also be denied.

Accordingly,

**IT IS ORDERED** denying Moffett's Motion to Strike (Doc. 18), Motion for Sanctions (Doc. 25), and Motion for Judicial Notice (Doc. 19).

**IT IS FURTHER ORDERED** granting Ally Bank's Motion for Judgment on the Pleadings (Doc. 23) and dismissing Moffett's SAC (Doc. 12) with prejudice.

**IT IS FURTHER ORDERED** denying as moot Moffett's Motion to Compel Supplemental Discovery (Doc. 50).

**IT IS FINALLY ORDERED** directing the Clerk of Court to update the caption to reflect that Ally Capital Corp. d/b/a Ally Bank is the Defendant, enter judgment accordingly, and close this case.

Dated this 21st day of September, 2026.

Honorable Sharad H. Desai
United States District Judge